# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                                        Case No. 07-57842

    WOODS, ROBERT E.,                    Chapter 13

        Debtor.                   Honorable Walter Shapero

_____/

In re:                                        Case No. 07-63201

    MCMAHAN, RANDALL,                    Chapter 13

        Debtor.                   Honorable Walter Shapero

_____/

In re:                                        Case No. 08-44055

    BROWN, HERMAN,                       Chapter 13

        Debtor.                   Honorable Walter Shapero

_____/

In re:                                        Case No. 08-44594

    MARTIN, SHARON J.,                   Chapter 13

        Debtor.                   Honorable Walter Shapero

_____/

In re:                                        Case No. 08-52626

    DUGAS, EULA M.,                      Chapter 13

        Debtor.                   Honorable Walter Shapero

_____/

In re:

                                                  Case No. 08-55198

DOBEL, DARREN A.,
ADKINS-DOBEL, LORRIE D.,                    Chapter 13

        Debtors.                        Honorable Walter Shapero

_____/

In re:

                                                  Case No. 08-56107

HILTUNEN, CHRISTOPHER R.,
HILTUNEN, KRISTINA J.,                       Chapter 13

        Debtors.                        Honorable Walter Shapero

_____/

In re:                                                  Case No. 08-56142

PAYNE, JAMES N.,                         Chapter 13

        Debtor.                        Honorable Walter Shapero

_____/

In re:                                                  Case No. 08-62708

ROBERTSON, PICCOLO,                  Chapter 13

        Debtor.                        Honorable Walter Shapero

_____/

In re:                                                  Case No. 08-67073

LAMPKIN, JEFFREY L.,                  Chapter 13

        Debtor.                        Honorable Walter Shapero

_____/

## OPINION REGARDING APPLICATIONS FOR COMPENSATION

These matters are before the Court upon various fee applications of Weik & Associates filed in connection with Chapter 13 cases in which Weik served as counsel to the debtor(s). With the exception of one case, no objections were filed to the various applications, but the Court concluded it was necessary to hold a hearing to inquire into potential issues appearing from the face of the applications. A hearing was conducted and the matter was taken under advisement.

## I.

Common issues pervade these fee applications so as to warrant their consolidation. What is essentially at issue is Applicant's current process for handling chapter 13 cases. The Court has some familiarity with Applicant's procedures (and the results such procedures yield for clients) from earlier cases in which fee applications were addressed. *See In Re Belcher,* 08-52516 (Bankr. E.D. Mich., February 5, 2009) and 07-58497 (Bankr. E.D. Mich., January 30, 2009); *In re Atkins*, 07-64841 ((Bankr. E.D. Mich., March 23, 2009). In those cases, some of the same issues, most notably the amounts sought under the label of "expenses" and duplication of services were addressed. Those same issues persist in the instant applications; however, there are also the added issues of unauthorized practice of law and compensation sought for tasks that are essentially clerical in nature.

Applicant handles a high volume of consumer cases in this District. To accomplish this, Applicant necessarily has a large workforce. Applicant's practice is essentially to have each attorney and legal assistant perform a discreet function across a large number of cases. As a result, there can be fifteen (15) or more individuals who work on a single chapter 13 case.

Applicant describes its process as follows:

Stage 1 – First appointment Debtor(s) meets with an attorney who only meets with potential clients to discuss their options.

Stage 2 – Debtor(s) meets with either a legal assistant or paralegal who gathers additional documentation needed in order to prepare bankruptcy petition, schedules, etc. The legal assistant or paralegal [sic] sole responsibility is to

ensure a smooth process and all documents/information is assessed and accounted for.

Stage 3 – Legal Assistant who's [sic] sole responsibility is to prepare petition, schedules, and plan with information gathered from Debtor(s).

Stage 4 – Debtor(s) meets with either a legal assistant or paralegal whose function is to meet with the Debtor(s) to review the documents for filing with Debtor(s) and spot any potential problems. These are the same individuals in Stage 2.

Stage 5 – Either Attorney Edward J. Gudeman or Attorney Sonya N. Goll does a final review of the petition, income, expenses, plan, means test, asset analysis to ensure accuracy.

Stage 6 – Bankruptcy documents get filed with the court.

Stage 7 – Legal Assistant whose sole responsibility is to prepare the file for 341 hearing, contacts Debtor(s) for any documentation needed for the 341 hearing and contacts with the Trustee's re: 341 hearing.

Stage 8 – An attorney prepares and attends the 341 hearing, only one attorney handles all 341 hearings so he/she is proficient with the process.

Stage 9 – One attorney and one paralegal or legal assistant are assigned to the case dependent upon Judge assignment. Prepares any amendments needed prior to confirmation hearing.

(Case No. 08-55198, Docket No. 52).

In light of the above process, specifically the actions of non-attorneys at Stages 2 and 4, and in light of particular time entries in the various applications, the Court became concerned about potential unauthorized practice of law. The Court also noticed specific time entries in which compensation was sought for tasks performed by legal assistants such as scheduling appointments; tasks which would seem clerical in nature and hence in the category of overhead. Additionally, certain time entries appeared to evidence a duplication of efforts by different of Applicant's employees on a single case. Finally, the applications request reimbursement for photocopies in the amount of $0.25 per page, facsimiles in the amount of $2.00 per page, PACER use in the amount of $0.25 per page, and use of the Trustee Network at $0.25 per page.

The Court caused notice of hearing to be sent to Applicant and advising of its concerns in regard to the following issues:

i. Unauthorized practice of law by paralegals and/or legal assistants;
ii. Compensation being sought for essentially clerical tasks which should be considered an overhead expense;
iii. Duplication of services performed; and/or
iv. Unreasonable expense costs.

Applicant appeared and explained its position on the above issues at the hearing.

## II.

### a. Unauthorized Practice of Law by Paralegals and/or Legal Assistants

As is evidenced by the time entries within the applications as well as Applicant's own description of its process, legal assistants are heavily involved throughout Applicant's operations. To be sure, there is nothing wrong with such involvement so long as it is not in such a manner and capacity as to constitute the practice of law.

Michigan law governs the determination of whether the activities at issue here constitute practice of law. *In re Bright*, 171 B.R. 799, 801 (Bankr. E.D. Mich. 1994). Michigan courts have not specifically addressed what constitutes the "practice of law" in the bankruptcy context, but have done so in other contexts such as divorce, real estate, probate, and wrongful death. *See e.g.*, *Cramer*, 399 Mich. 116, 249 N.W.2d 1 (Mich. 1976) (divorce); *Ingham County Bar Association v. Walter Neller Co.*, 342 Mich. 214, 69 N.W.2d 713, 717 (Mich. 1955) (real estate); *State of Michigan v. Kupris*, 366 Mich. 688, 116 N.W.2d 341 (Mich. 1962) (real estate); *Detroit Bar Ass'n v. Union Guardian Trust Co.*, 282 Mich. 216, 276 N.W. 365 (Mich. 1937) (probate); *Shapiro v. Steinberg*, 176 Mich. App. 683, 440 N.W.2d 9 (Mich. Ct. App. 1989) (wrongful death). In those situations, the courts have held that "advertising professional guidance to clients, arranging personal conferences with clients, preparing documents, filing completed documents with the court, and personally advising clients as to proper testimony is the practice of law and, thus, when performed by a non-attorney constitutes the unauthorized practice of law." *In re Bright*, 171 B.R. at 802. In *Bright*, and later in *In re Pinkins*, 213 B.R. 818, 821 (Bankr. E.D. Mich. 1997), bankruptcy judges in this District addressed what constitutes practice of law in the bankruptcy context. The *Bright* and *Pinkins*

decisions noted that the following activities were found to constitute practice of law in other jurisdictions:

(1) Determining when to file bankruptcy cases. *In re Herren*, 138 B.R. 989, 995 (Bankr. D. Wyo. 1992).

(2) Deciding whether to file a Chapter 7 or a Chapter 13. *In re Arthur*, 15 B.R. 541 (Bankr. E.D. Pa. 1981)].

(3) Filling out or assisting debtors in completing forms or schedules. *In re Glad*, 98 B.R. 976, 978 (9th Cir. BAP 1989); *In re McCarthy*, 149 B.R. 162, 166 (Bankr. S.D. Cal. 1992); *Herren*, 138 B.R. at 993-4; *In re Webster*, 120 B.R. 111, 113 (Bankr. E.D. Wis. 1990); *In re Bachmann*, 113 B.R. 769, 773-4 (Bankr. S.D. Fla. 1990); *In re Calzadilla*, 151 B.R. 622, 625 (Bankr. S.D. Fla. 1993).

(4) Solicitation of financial information and preparation of schedules. *Herren*, 138 B.R. at 994; *In re Grimes*, 115 B.R. 639, 643 (Bankr. D.S.D. 1990).

(5) Providing clients with definitions of legal terms of art. *Herren*, 138 B.R. at 995.

(6) Advising debtors which exemptions they should claim. *McCarthy*, 149 B.R. at 166-7; *Herren*, 138 B.R. at 995; *Webster*, 120 B.R. at 113.

(7) Preparing motions and answers to motions. *McCarthy*, 149 B.R. at 166; *Webster*, 120 B.R. at 113.

(8) Advising debtors on dischargeability issues. *Arthur*, 15 B.R. at 54[6].

(9) Advising debtors concerning the automatic stay. *Arthur*, 15 B.R. at 54[6].

(10) Habitual drafting of legal instruments for hire. *Arthur*, 15 B.R. at 54[6].

(11) Correcting "errors" or omissions on bankruptcy forms. *In re Calzadilla*, 151 B.R. at 625.

(12) Advising clients as to various remedies and procedures available in the bankruptcy system. *In re Calzadilla*, 151 B.R. at 625.

*Pinkins* , 213 B.R. at 820. The *Pinkins* decision held that the various activities before it constituted practice of law. *Pinkins* is particularly apropos to the present situation because many of the activities found to constitute the practice of law in that decision are present here. Moreover, the namesake attorney and owner of Applicant was one of two

attorneys of the law firm involved in that decision. While not as numerous as those in *Pinkins*, there are activities described in the instant applications that constitute unauthorized practice of law.

Applicant's description of its process, as well as specific time entries within the applications, makes clear that the legal assistants are engaging in the practice of law. Specifically, stages 2 through 4 necessarily involve the practice of law and yet there is no attorney involvement according to Applicant's description. At those stages:

> Stage 2 – Debtor(s) meets with either a legal assistant or paralegal who gathers additional documentation needed in order to prepare bankruptcy petition, schedules, etc. The legal assistant or paralegal [sic] sole responsibility is to ensure a smooth process and all documents/information is assessed and accounted for.

> Stage 3 – Legal Assistant who's [sic] sole responsibility is to prepare petition, schedules, and plan with information gathered from Debtor(s).

> Stage 4 – Debtor(s) meets with either a legal assistant or paralegal whose function is to meet with the Debtor(s) to review the documents for filing with Debtor(s) and spot any potential problems. These are the same individuals in Stage 2.

The spotting of any potential problems in Stage 4 requires the exercise of legal judgment and hence, is the practice of law. Comparing Applicant's description of its process with the time entries in its fee applications, it appears that Stage 4 is the point at which the client signs all of the relevant bankruptcy documents. Although an attorney reviews these documents at Stage 5 prior to actual filing with the Court, this does not change the nature of the activities that have already occurred (document preparation, client consultation, and client signing documents), activities which clearly constitute the practice of law.

Necessarily included within the above stages is the matter of exemptions, an issue the Court specifically inquired about at the hearing. After first seeming less than sure, Applicant said that the attorney whose sole function it is to meet with potential clients, makes initial exemption determinations at the initial pre-retainment interview, and then confers with the legal assistants that are drawing up the documents as to exactly which exemptions will be claimed. Interestingly, none of the time entries in the applications evidence such. Regardless, even if such were to occur, there appears to be no

consultation with the client as to exemptions by an *attorney* prior to the client signing the documents. Exemptions are important in the bankruptcy process to debtors and creditors alike. They are complex, and their proper invocation in a timely manner is most important to a debtor, as a failure to properly and timely claim them can lead to their loss. Questions of law and fact are usually involved in such determinations and the work done by the legal assistants in this case crossed the line into an area of the practice of law in circumstances where there was insufficient involvement between an attorney and a client, particularly at the final stages of the decision-making process and before what was to be filed was actually signed. The fact that with some exceptions, debtors must often bear the consequences of their attorneys' mistakes heightens the importance of appropriately dealing with these, and other matters, early on.

The Court also noted specific time entries which involve the discussion (or perhaps more accurately, the explanation) of legal options by a non-attorney with the client. Such communications constitute the practice of law. For example, in the Dobel (08-55198) application, the first time entry occurs on June 4, 2008 and involved a legal assistant, the task description states:

> Telephone call to Debtor re: options as previous case was dismissed. Scheduled an appointment to re-file bankruptcy case. Advised Debtor of documents to bring to appointment.

(Case No. 08-55198, Docket No. 52). Two telling things stand out from this time entry: (1) Debtors' legal options were discussed; and (2) a decision was made that Debtors were going to re-file the bankruptcy case.

Another example is evident in Woods (07-57842). On August 18, 2008, a legal assistant spent 0.3 hours:

> Meeting with Debtor. Discussed plan status, delinquency in plan payments, and income tax return/refund obligation. Answered several questions.

(Case No. 07-57842, Docket No. 47). There is no time entry evidencing a meeting between the legal assistant and an attorney to discuss the answers that legal assistant provided to Debtor at the meeting.

A further example is Payne (08-56142). On December 5, 2008, a legal assistant spent 0.4 hours:

> Conference with Debtor re: receipt of a shut off notice for her DTE bill, reviewed bill, explained to client that it is a post petition debt and that she is responsible to make all current payments and that there is nothing that can be done with bankruptcy, client understood but needs a plan modification.

(Case No. 08-56142, Docket No. 32). There is no indication in the application that the legal assistant discussed with an attorney before or after the conference the nature and substance of a needed plan modification.

A further example is certain time entries of a legal assistant in the McMahan (07-63201) application. The June 4, 2008 entry provides:

> Returned Debtor's telephone call re: Order Granting Motion for Relief from Co-Debtor Stay. Answered questions.

The August 5, 2008 entry provides:

> Meeting with Debtor re: DaimlerChrysler Financial Services Americas' Motion for Relief. Reviewed Trustee's Network 13 System and Docket Report. Discussed options. Completed motion response form.

(Case No. 07-63201, Docket No. 69). Applicant actually raised the June 4 time entry at the hearing and informed that the legal assistant had spoken with an attorney in the office prior to discussing with the client their options. Applicant further stated that such an occurrence (a legal assistant meeting with a client) only happens when a client "pops in" unexpectedly and all attorneys are otherwise disposed. Applicant's explanation actually raises more questions than it answers. For example, how is a legal assistant able to anticipate a client unexpectedly dropping by the office to discuss yet unknown legal issues with an attorney in advance? Moreover, the June 4 time entry appears to have occurred as a return phone call, so it is unclear how Applicant's explanation even addresses this particular situation. Nonetheless, even if an attorney does meet with a legal assistant in advance of a meeting between the legal assistant and a client, or the legal assistant takes a question from the client to the attorney and relates the answer back to the client, there is still a problem. As *Pinkins* explained:

The primary concern with this practice is that the legal assistant uses his or her own judgment to decide which questions to refer to an attorney and which questions to attempt to answer themselves. There is also a chance that the assistant will not properly phrase the question to the attorney or will not communicate the advice properly to the client. Moreover, and most importantly, the client is entitled to the professional judgment of the attorney.

213 B.R. at 821.

In light of the above, it would appear that the unauthorized practice of law occurs as a matter of ordinary course in Applicant's operations. A variety of sanctions can be imposed for the unauthorized practice of law, including: injunctive relief; disgorgement of fees charged; denial of compensation, and fines. *See Pinkins*, 213 B.R. at 823; *Bright*, 171 B.R. at 807. The Court believes that the appropriate remedy here is to deny all compensation related to the services of non-attorneys. While not all such services in the instant applications constitute the unauthorized practice of law, those that do are sufficiently pervasive as to warrant such relief. Going forward, Applicant needs to be particularly mindful of the functions that it directs its non-attorney employees to perform. Such employees are to assist the attorney in the attorney's practice of law; not perform functions which standing alone would constitute the practice of law only to have an attorney subsequently check the work.

*b. Compensation Sought for Essentially Clerical Tasks More Appropriately Considered Overhead*

Another potential issue that came to light during the Court's review of the applications is the practice of billing for tasks performed by legal assistants that are essentially clerical in nature, most notably, appointment scheduling. For example, in the Hiltunen (08-56107), there is a 0.1 hour time entry by a legal assistant on January 20, 2009 for:

Telephone call from Debtors re: scheduling a plan modification appointment. Appointment scheduled for 2-20-09.

Then, on February 19, there is another 0.1 hour time entry by the legal assistant:

> Telephone call from Debtors re: canceling the plan modification appointment
> scheduled for tomorrow.

From their own descriptions, both of these time entries appear to be clerical. Applicant informed at the hearing that it isn't its typical practice to charge for scheduling appointments, that such charges are only included when the phone call addresses other additional or attendant topics (such as materials the client must bring to the meeting).

This Court is in agreement with various other courts around the country that clerical tasks are not compensable. *See e.g.*, *In re Woodward East Project, Inc.*, 195 B.R. 372 (Bankr. E.D. Mich. 1996); *In re Busy Beaver Bldg. Ctrs.*, 133 B.R. 753, 756 (Bankr. W.D. Pa. 1991); *In re Jones*, 2008 Bankr. LEXIS 2715 (Bankr. E.D. Tenn. Oct. 6, 2008); *In re Rubber Dev.*, 2000 Bankr. LEXIS 971 (Bankr. N.D. Iowa Apr. 24, 2000).

> [I]f the service performed by a paraprofessional consists of typing, data entry,
> checking court dockets or court dates, manually assembling, collating, marking,
> processing, photocopying, or mailing documents, the task is clerical in nature and
> not compensable. Such tasks are traditionally charged to overhead and included in
> the professional's hourly rate.

*In re Bass*, 227 B.R. 103, 107 (Bankr. E.D. Mich. 1998) (quoting *In re Bank of New England Corp.*, 134 B.R. 450 (Bankr. D. Mass. 1991), aff'd, 142 B.R. 584 (D. Mass. 1992)). To the above list, this Court would add telephone calls to clients for the sole purpose of setting or reminding of an office appointment. While a telephone call from a legal assistant to a client which discusses matters in addition to setting an appointment may be compensable, a call which solely sets or reminds of an appointment is not.

In this matter, the above information is for Applicant's prospective benefit in future fee applications. It is moot which specific time entries in the instant applications are uncompensable as clerical because the issue appears confined to the non-attorney time entries, the entire class of which are already being disallowed because of unauthorized practice of law.


### c. Duplication of Services

It is a well settled principle that the estate will not compensate professionals for duplication of services. *See*, *e.g.*, *Cle--Ware Industries, Inc. v. Sokolsky*, 493 F.2d 863,

875 (6th Cir. 1974). As this Court has noted in previous opinions, duplication of services is inherent in this Applicant's process for handling cases, which can involve fifteen (15) or more professionals and paraprofessionals. *See In Re Belcher,* 08-52516 (Bankr. E.D. Mich., February 5, 2009) and 07-58497 (Bankr. E.D. Mich., January 30, 2009); *In re Atkins*, 07-64841 ((Bankr. E.D. Mich., March 23, 2009). Some patent examples of this inherent duplication appear in the applications currently before the Court.

One of the more abhorrent illustrations of duplication of services (and poor representation generally) is Dugas (08-52626). On July 25, 2008, a legal assistant spent 0.3 hours preparing for the chapter 13 confirmation hearing, 0.1 hours reviewing PACER, and 0.2 hours reviewing Trustee's Network 13 System from which she concluded Debtor was 100% paid into the plan. A little more than two weeks later, a different legal assistant spent 0.2 hours reviewing Trustee's Network 13 System from which she also concluded Debtor was 100% paid into the plan. One week later, on August 19, 2008, after several telephone calls and a meeting with Debtor, an attorney filed a Chapter 13 Confirmation Hearing Certificate which provided:

> 1. _x__ Request confirmation of the debtor's plan, because all timely objections of creditors and the trustee have been resolved. I have emailed to the trustee a proposed order confirming the plan, as required in paragraph 2 of the Chapter 13 Case Management Order.

(Case No. 08-52626, Docket No. 27). The said attorney then appeared at the August 25, 2008 confirmation hearing and the Debtor was not present. The case was dismissed on Trustee's oral motion to dismiss citing poor pay history. When the attorney spoke with the Debtor several days after the dismissal, Debtor informed that she was current in her plan payments. The attorney then checked the Trustee's Network 13 System, determined that Debtor was 100% paid at the time of the confirmation hearing, and discussed with the Debtor a motion to reinstate the case.

This series of events is troubling for several reasons: first, two different legal assistants ascertained the same fact (that Debtor was 100% paid into the plan), for the same reason (preparing for confirmation); second, despite the duplication in efforts by the legal assistants, when the attorney appeared at the confirmation hearing, she was either not adequately advised or unaware of the fact that Debtor was 100% paid in and the case

was dismissed on the erroneous premise that plan payments were not current. Thus, in addition to, and despite the duplication of preparatory efforts, the service provided the debtor, i.e., legal representation at the confirmation hearing, was itself deficient.

Another example of duplication in the Dugas case occurred in the handling of the § 341 Meeting of Creditors. On July 2, 2008, an attorney recorded 0.4 hours preparing for the Meeting. On July 8, 2008, another attorney spent 0.2 hours reviewing a 341 status sheet and on July 15, 2008, spent 0.3 hours reviewing the file in preparation for the 341 hearing and 0.7 hours traveling to and attending the hearing. Interestingly, in addition to appearing to constitute duplication of efforts by these two attorneys, this series of events appears contrary to Stage 8[1] of Applicant's description of its process, which is recited at the front of the Dugas application.

Another example of duplication can be found in the Woods (07-57842) application. On November 4, 2008, an attorney spent 1.7 hours reviewing Debtor's file, meeting with Debtor, drafting plan modifications, reviewing the plan modifications with Debtor who signed the modifications, and then filing the modifications. When it came time for the hearing on the plan modifications, a new attorney charged 0.3 hours to review the file prior to the modification hearing and 0.5 hours to attend the hearing. A near identical series of events occurred in Brown (08-44055). One attorney spent 1.7 hours meeting with Debtor, preparing a plan modification, and filing the plan modification. Then, another attorney charged 0.3 hours to review the plan modification prior to attending the hearing. Presumably, had the attorney who prepared the modifications been the attorney to appear at the hearings, less time would have been required to review the file prior to the hearing. The time the second attorney spent familiarizing himself with the matter is duplication and not compensable. The Court finds 0.1 hour would be a reasonable amount of compensable time for an attorney to review a plan modification they had previously drafted prior to a hearing on the modification.

---

[1] "Stage 8 – An attorney prepares and attends the 341 hearing, only one attorney handles all 341 hearings so he/she is proficient with the process." (Case No. 08-52626, Docket No. 53).

*d. Overstated Expenses*

As has been pointed out to Applicant in previous opinions regarding its fee applications, 11 U.S.C. § 330 authorizes reimbursement only for "actual and necessary" expenses. This Court has previously expressed concerns with the $0.25 per page photocopy and $2.00 per page facsimile amounts that Applicant seeks as reimbursement, however, at the March 31, 2009 hearing, Applicant's representative was unable to explain to the Court the calculation employed in arriving at these numbers. Rather, she stated that she "thinks" that the amounts represent the costs of paper, toner, and equipment, but she was not exactly sure and those amounts were in place prior to her arrival at the firm. This explanation provided by Applicant is insufficient to address the Court's concerns regarding the accuracy of the actual expense amounts for these items. It is Applicant's burden to prove it is entitled to the expenses requested and it has failed to carry that burden.

Two other expense items that trouble the Court regard charges for PACER and the Trustee's Chapter 13 Network. In one of its applications, expense reimbursement of $0.25 per page for PACER is sought. *See* Martin, 08-44594. This is clearly an overstated amount because PACER charges only $0.08 per page. Similarly, the $0.25 per page for accessing Trustee's Chapter 13 Network appears excessive and will not be allowed absent the production of proof by Applicant that such is the actual amount of the expense.

## III.

For the reasons stated above, the Court will reduce the fees requested as follows: no compensation will be awarded for non-attorney time entries as a sanction for the numerous instances of unauthorized practice of law; compensation will be disallowed in the specific instances of duplication highlighted by the Court and the remaining legal fees will be reduced by 30% to account for the duplication that is inherent as a result of Applicant's system which does not lend itself to exact quantification from the time entries; and lastly, no reimbursement will be awarded for copying, faxing, PACER, or

Trustee Network expenses.  After these adjustments the amounts to be awarded are as follows:

Robert E. Woods, 07-57842:  $459.20 in fees and $25.23 for expenses.

Randall McMahan, 07-63201:  $514.50 in fees and $30.82 for expenses.

Herman Brown, 08-44055:  $410.90 in fees and $36.06 for expenses.

Sharon Janett Martin, 08-44594:  $304.50 in fees and $14.70 for expenses.

Eula M. Dugas, 08-52626:  $1,485.05 in fees and $36.32 for expenses.

Darren August Dobel and Lorrie Darlene Adkins-Dobel, 08-55198:  $1,830.50 in fees and $55.18 for expenses.

Christopher Ray Hiltunen and Kristina Joy Hiltunen, 08-56107:  $322.00 in fees and $13.02 in expenses.

James Norma Payne, 08-56142:  $319.90 in fees and $0.42 for expenses.

Piccolo Robertson, 08-62708:  $1,424.15 in fees and $28.74 for expenses.

Jeffrey L. Lampkin, 08-67073:  $526.05 in fees and $7.14 for expenses.

Applicant shall submit appropriate orders for entry.
.

**Signed on June 11, 2009**

**_____ __/s/ Walter Shapero_     ____**
**Walter Shapero**
**United States Bankruptcy Judge**